**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT WILHELM,<br><br>              Plaintiff,<br><br>    v.<br><br>SWITCH, INC., ROB ROY, DONALD D. SNYDER, ANGELA ARCHON, JASON GENRICH, LIANE PELLETIER, ZAREH SARRAFIAN, KIMBERLY SHEEHY, TOM THOMAS, and BRYAN WOLF,<br><br>              Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Robert Wilhelm ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Switch, Inc. ("Switch" or the "Company") and the members of Switch's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Switch to DigitalBridge Group, Inc. ("DigitalBridge") and IFM Investors Pty Ltd ("IFM") (the "Proposed Transaction").

2. On May 11, 2022, Switch entered into an Agreement and Plan of Merger with Sunshine Parent Merger Sub Inc. ("Parent Merger Sub"), Sunshine Merger Sub, Ltd. ("Company Merger Sub"), Switch, Ltd. ("Company Ltd."), and Sunshine Bidco Inc. ("Parent") (the "Merger Agreement"). Parent and Parent Merger Sub are each affiliated with investment funds controlled by affiliates of DigitalBridge and IFM. Pursuant to the terms of the Merger Agreement, Parent Merger Sub will merge with and into Switch and Company Merger Sub will merge with and into Company Ltd. The separate existence of Parent Merger Sub and Company Merger Sub will cease, with Switch and Company Ltd. continuing as the surviving company and limited liability company in the mergers, respectively. Following the completion of the mergers, holders of Switch common stock and/or limited liability units of Company Ltd. will be entitled to receive $34.25 in cash.

3. On June 27, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Switch stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections and the financial analyses that support the fairness opinion provided by the special committee of the Board's ("Special Committee") financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"); and (ii) potential conflicts of interest faced by the Special Committee's additional financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley").

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Switch stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Switch stockholders to vote on the Proposed Transaction is currently scheduled for August 4, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Switch's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Switch's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Switch common stock.

10. Defendant Switch is a Nevada corporation, with its principal executive offices located at 7135 S. Decatur Boulevard, Las Vegas, Nevada 89118. Switch's shares trade on the New York Stock Exchange under the ticker symbol "SWCH."

11. Defendant Rob Roy is the Company's founder and has been Chief Executive Officer, Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Donald D. Snyder has been Lead Independent Director of the Company at all relevant times.

13. Defendant Angela Archon has been a director of the Company at all relevant times.

14. Defendant Jason Genrich has been a director of the Company at all relevant times.

15. Defendant Liane Pelletier has been a director of the Company at all relevant times.

16. Defendant Zareh Sarrafian has been a director of the Company at all relevant times.

17. Defendant Kimberly Sheehy has been a director of the Company at all relevant times.

18. Defendant Tom Thomas has been a director of the Company at all relevant times.

19. Defendant Bryan Wolf has been a director of the Company at all relevant times.

20. Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21. Switch is the independent leader in exascale data center ecosystems, edge data center designs, industry-leading telecommunications solutions and next-generation technology innovation. The Company provides solutions to help enable the growth of the internet and the services it enables. Switch's advanced data centers reside at the center of its platform and provide

4

power densities that exceed industry averages with efficient cooling, while being powered by 100% renewable energy. The Company currently has more than 1,300 customers, including some of the world's largest technology and digital media companies, cloud, IT and software providers, financial institutions and network and telecommunications providers.

**The Proposed Transaction**

22. On May 11, 2022, Switch announced that it had entered into the Proposed Transaction, stating, in relevant part:

> LAS VEGAS, May 11, 2022 -- Switch, Inc. (NYSE: SWCH) ("Switch") today announced it has entered into a definitive agreement with DigitalBridge Group, Inc. (NYSE: DBRG) ("DigitalBridge"), under which DigitalBridge Partners II, the value-added digital infrastructure equity strategy of the investment management platform of DigitalBridge, and an affiliate of global infrastructure investor IFM Investors ("IFM") will acquire all outstanding common shares of Switch for $34.25 per share in an all-cash transaction valued at approximately $11 billion, including the assumption of debt.
>
> "Today's announcement is an important step towards our long-term vision for the growth and evolution of our company. Through this partnership we will be ideally positioned to continue to meet strong customer demand for Switch's environmentally sustainable Tier 5 data center infrastructure," said Switch Founder and CEO, Rob Roy. "Following our expansion into a Fifth Prime campus last year, and with our plan to construct more than 11 million additional square feet of capacity through 2030, Switch's strategic position has never been stronger. The combination of our advanced data center infrastructure, significant expansion capacity in our land bank, and a new partnership with experienced digital infrastructure investors lays a strong foundation for Switch's continued industry leading growth."
>
> "This transaction provides significant and immediate value to our stockholders, and is a reflection of Switch's industry leading performance and differentiated technology," said Thomas Morton, President of Switch. "Through this transaction, we will remain at the forefront of growth and innovation within the data center industry. Following a robust evaluation of market dynamics and strategic review process by the company and its Board of Directors, we strongly believe that this is the optimal path forward for Switch and our shareholders."
>
> Marc Ganzi, Chief Executive Officer of DigitalBridge, said, "At DigitalBridge, we are building the world's leading global digital infrastructure investment platform, and this transaction allows us to partner with one of the industry's fastest growing

and highest quality data center portfolios. Rob and his team share our vision for the future of communications infrastructure, making us the ideal partner to scale their business both domestically and internationally to meet the exponentially rising demand from large enterprise customers looking for mission critical digital infrastructure. We are also pleased to partner with IFM Investors, one of the world's leading institutional infrastructure investors, to execute this compelling transaction."

"We have a proven track record of accelerating companies' time-to-scale by leveraging our deep domain expertise and access to capital," said Jon Mauck, Senior Managing Director of DigitalBridge Investment Management. "We look forward to supporting Switch's continued growth with the creative solutions and operational expertise necessary to scale these leading assets going forward. This fast-growing and renewables-powered business is a highly complementary fit within our expanding IM business and broader strategic priorities."

Kyle Mangini, Global Head of Infrastructure at IFM, said, "IFM is excited to partner with DigitalBridge and Switch on this transaction. We consider Switch to be an excellent digital infrastructure business with strong potential. The company is a recognized industry leader with an impressive approach to ESG. Today's announcement reflects IFM's strategy of investing in high quality infrastructure to protect and grow the long-term retirement savings of working people."

**Transaction Approvals and Timing**

The transaction, which was unanimously approved by a special committee of the Switch Board of Directors, is expected to close in the second half of 2022. The transaction is subject to approval by Switch stockholders and the satisfaction of other customary closing conditions. Upon completion of the transaction, Switch will no longer be traded or listed on any public securities exchange.

**The Materially Incomplete and Misleading Proxy Statement**

23.     On June 27, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Switch stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections and the financial analyses that support the fairness opinion provided by the Special Committee's financial advisor, Goldman Sachs; and (iii)

6

potential conflicts of interest faced by the Special Committee's additional financial advisor, Morgan Stanley.

*Material Misrepresentations and/or Omissions Concerning Switch's Financial Projections and Goldman Sachs' Financial Analyses*

24. The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

25. For example, with respect to the Company's financial projections, the Proxy Statement fails to disclose all line items underlying: (i) Adjusted EBITDA; (ii) Unlevered Free Cash Flow; and (iii) AFFO.

26. The Proxy Statement also fails to disclose material information concerning Goldman Sachs' financial analyses.

27. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the terminal year estimate of the free cash flow to be generated by Switch; (ii) the Company's terminal values; (iii) the inputs and assumptions underlying the discount rates ranging from 7.0% to 8.0%; (iv) the net debt of Switch as of March 31, 2022; and (v) the number of fully-diluted outstanding shares of Switch.

28. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose a quantification of: (i) Switch's forecasted net debt as of December 31, 2022 to 2024; (ii) the projected year-end fully diluted shares of Switch's common stock for each of the years 2022 to 2024; and (iii) the inputs and assumptions underlying the discount rate of 8.2%.

29. With respect to Goldman Sachs' *Selected Companies Analysis* and *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed, respectively.

30. With respect to Goldman Sachs' *Premia Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed; and (ii) the individual premia observed for each transaction.

*Material Misrepresentations and/or Omissions Concerning Morgan Stanley's Potential Conflicts of Interest*

31. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by the Special Committee's additional financial advisor, Morgan Stanley.

32. For example, the Proxy Statement fails to disclose the terms of Morgan Stanley's engagement, including: (i) the amount of compensation Morgan Stanley has received or will receive in connection with its engagement; (ii) the amount of Morgan Stanley's compensation that is contingent upon consummation of the Proposed Transaction; and (iii) whether Morgan Stanley has performed any services for any parties to the Merger Agreement in the prior two years and, if so, the nature of the services performed and amount of compensation received.

33. The Proxy Statement also fails to disclose whether Morgan Stanley performed any financial analyses for the Special Committee or the Board and, if so, a fair summary thereof.

34. In sum, the omission of the above-referenced information renders statements in the "Certain Unaudited Financial Projections," "Opinion of the Special Committee's Financial Advisor," and "Background of the Mergers" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Switch will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Switch**

35. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

36. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Switch is liable as the issuer of these statements.

37. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

38. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

39. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

40. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

41. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

42. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

43.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44.     The Individual Defendants acted as controlling persons of Switch within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Switch and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

47.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Switch, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 7, 2022                                        **ACOCELLI LAW, PLLC**

                                                           By  */s/ Richard A. Acocelli*
                                                                Richard A. Acocelli
                                                                33 Flying Point Road, Suite 131
                                                                Southampton, NY 11968
                                                                Tel: (631) 204-6187
                                                                Email: racocelli@acocellilaw.com

                                                                *Attorneys for Plaintiff*